IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT T. YURCHAK,

    Plaintiff,

    v.

COUNTY OF CARBON, et al.,

    Defendants.

CIVIL ACTION NO. 3:02-CV-0049

(JUDGE CAPUTO)

**MEMORANDUM**

Presently before the Court is Motion For Summary Judgment on Behalf of Defendants, County of Carbon, Pennsylvania a/k/a Carbon County Board of Commissioners, Tom C. Gerhard, and Wayne E. Nothstein (Doc. 35). For the reasons set forth below, the Court will deny Defendant's motion. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

In 1996, Plaintiff Robert T. Yurchak was appointed by a Democratic majority Board of Commissioners to the position of Chief Public Defender for Carbon County ("Chief PD"). (Doc. 1, ¶ 13.) Plaintiff is a Registered Democrat. (Doc. 1, ¶ 23; Doc. 36, ¶ 34.) Defendants Tom C. Gerhard and Wayne E. Nothstein, as well as Charles W. Getz, were Carbon County Commissioners at the relevant time. Plaintiff alleges that the Carbon County Board of Commissioners terminated him from his position as Chief PD solely for political reasons on January 7, 2002.

Defendants have submitted evidence that as Chief PD, Plaintiff's job description included:

> ESSENTIAL FUNCTIONS OF JOB:
> 1. Supervises office staff and operation of Public Defender's office.
> 2. Counsels and advises public defenders in handling of cases.
> 3. Prepares department budget and supervises expenditures.
> 4. Manages caseload and represents those clients at hearings, pre-trial, pleas, bail, trial sentencing, etc. and carries out other duties of a lawyer.
> 5. Makes departmental policies and procedures.
> 6. Makes referrals on misdirected requests for assistance.
> 7. Conducts monthly staff meetings.
> 8. Performs performance evaluations for staff personnel and supervises other personnel issues. Interviews and recommends the hiring of departmental personnel.
> 9. Prepares reports and inquiries for Commissioners and Courts.
> 10. Provides the County and general public with information on the function of the office.
>              * * *
> OTHER DUTIES OF JOB:
> 2. Serves on Committees and Task forces as requested.

(Doc. 36-3, at 1.) The job description submitted by Defendants also details that the Chief PD, "[r]eceives no instruction or supervision from Commissioners in regard to daily work duties. . . ." *Id.* Further, Plaintiff was one of five persons permitted to be on the Salary Board for the Public Defender's office as part of his duties as Chief PD. (Doc. 57, ¶ 6.)

Next, Defendants submitted evidence that in August 2000, President Judge John Lavelle of Carbon County asked to meet with the County Commissioners about what he perceived to be Plaintiff's misconduct as Chief PD. (Doc. 36, ¶ 11.) Defendants further submitted evidence that Judge Lavelle informed the Commissioners that Plaintiff had improperly allowed his secretary to be used to pass a note to Plaintiff's girlfriend, Cynthia

2

Ray, in a private criminal case ("the note-passing incident").  (Doc. 36, ¶ 12; Doc. 57, ¶ 13.)  Plaintiff submitted evidence that it was common practice to use any person available to pass a note to an attorney.  (Doc. 57, ¶ 14.)

On August 29, 2000, the Commissioners met with Plaintiff concerning the note-passing incident.  (Doc. 36, ¶ 16; Doc. 57, ¶ 15.)  Following the meeting, Plaintiff agreed to not use the public defender secretary to pass notes to attorneys who were not public defenders.  (Doc. 36, ¶ 17; Doc. 57, ¶ 16.)  Plaintiff posted a notice to that effect at the public defender's office.  (Doc. 36, ¶ 18; Doc. 57, ¶ 16.)

Then in 2001, Plaintiff ran as a Democratic candidate for Judge of the Court of Common Pleas of Carbon County.  (Doc. 1, ¶ 31; Doc. 36, ¶ 20.)  Plaintiff lost the election to the Republican candidate, Roger N. Nanovic, II, who won both tickets in the primary on May 15, 2001.  *Id.*  Defendants Gerhard and Nothstein strongly supported Roger N. Nanovic, II, during the election.  (Doc. 1, ¶ 32; Doc. 36, ¶ 21)  Particularly, Plaintiff submitted evidence that Defendants Gerhard and Nothstein displayed political signs in the windows of their cars, and Defendant Gerhard placed an advertisement in *The Times News* against Plaintiff which read in part, "??? An endorsement for Someone who Defends the Criminal Element?????."  (Doc. 1, ¶¶ 34, 36, Ex. D; Doc. 36, ¶ 22.)

On January 7, 2002, the Commissioners voted to terminate Plaintiff as Chief PD.  (Doc. 1, ¶ 18; Doc. 36, ¶ 26.)  Plaintiff submitted evidence that neither Commissioner Nothstein or Commissioner Gerhard discussed their intention to terminate Plaintiff with Commissioner Getz prior to the vote.  (Doc. 57, ¶ 21; Doc. 59, Ex. 3, at 6, 16.)  Plaintiff was celebrating Orthodox Christmas on January 7, 2002, and did not learn he had been terminated until a few days later when Commissioner Charles Getz informed Plaintiff on

approximately January 10, 2002.  (Doc. 36, ¶ 28.)  The Commissioners appointed Greg Mousseau to replace Plaintiff as Chief PD.  (Doc. 36, ¶ 27; Doc. 57, ¶ 18.)  Plaintiff submitted evidence that Greg Mousseau is Republican.  (Doc. 57, ¶ 18.)

On January 11, 2002, Plaintiff filed his Complaint.  (Doc. 1.)  On January 24, 2002, Defendants filed a Motion to Dismiss.  (Doc. 10.)  On May 7, 2002, the Court partially granted Defendants' motion and dismissed Plaintiff's claims for intentional infliction of emotional distress and Plaintiff's claims for punitive damages against Carbon County.  (Doc. 15.)  Defendants filed an interlocutory appeal to the Third Circuit Court of Appeals on May 24, 2002.  (Doc. 16).  The Court of Appeals affirmed the Court's May 7, 2002 Order.

On June 29, 2005, Plaintiff voluntarily dismissed all claims against Charles Getz. (Doc. 31.)  Defendants Carbon County, Tom C. Gerhard, and Wayne E. Nothstein then filed the present Motion for Summary Judgment on July 1, 2005.  (Doc. 35.)  This motion is fully briefed and ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish

that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Anderson*, 477 U.S. at 256-257.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  In deciding a motion for summary judgment, "the judge's function is not himself

to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

**1.     Section 1983**

**a.     First Amendment**

An employee's freedom of association rights under the First Amendment are infringed by dismissal of the employee for partisan reasons, unless the employee occupies a "policy-making" position. *See Elrod v. Burns*, 427 U.S. 347 (1976). The Supreme Court refined the policymaker exception in *Branti v. Finkel*, 445 U.S. 507 (1980), "holding 'the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.'" *Curinga v. City of Clairton*, 357 F.3d 305, 310 (3d Cir. 2004) (quoting *Branti*, 445 U.S. at 518). The Court's inquiry should focus on the public office in question, and not on the actual past duties of the particular employee involved. *Wetzel v. Tucker,* 139 F.3d 380, 384 (3d Cir. 1998). However, evidence regarding actual past duties may be informative. *See id.* The defendant bears the burden of proving that party affiliation is an appropriate requirement for the effective service of the public office involved. *Laskaris v. Thornburgh*, 733 F.2d 260, 265 n.4 (3d Cir. 1984), *cert. denied*, 469 U.S. 886 (1984).

Defendants argue that they have submitted additional evidence not available when the Court issued its May 7, 2002 Order, which demonstrates that political affiliation is an

appropriate criteria for the position of Chief Public Defender.  I disagree.

As the Court explained in its May 7, 2002 Order:

> In *Branti*, the Supreme Court noted that, because public defenders represent criminal defendants in adversarial proceedings with the state,  "whatever policymaking occurs in the public defender's office must relate to the needs of individual clients and not to any partisan political interests."  *Branti*, 445 U.S. at 519.
> . . .A chief public defender['s]. . .role as the county's legal adversary suggests that county authorities should not have the authority to remove a chief public defender for political reasons.  Given the independent nature of a public defender's office, it does not appear that "a difference in party affiliation [will] be highly likely to cause [a chief public defender] to be ineffective in carrying out the duties and responsibilities of the office. . . ."  *Waskovich v. Morgano,* 2 F.3d 1292, 1297 (3d Cir. 1993) (quoting *Zold v. Township of Mantua*, 935 F.2d 633, 635 (3d Cir. 1991)).

(Doc. 15 at 5-6.)  The evidence submitted by Defendants detailing the job responsibilities of Chief PD fails to demonstrate that the position of Chief PD involves "meaningful input into decision making concerning the nature and scope of a major [county] program." *Brown v. Trench*, 787 F.2d 167, 168-70 (3d Cir. 1986).  Rather, the job description submitted by Defendants supports the Court's previous determination that the independent nature of a public defender's office does not warrant political affiliation; as the description states that the Chief PD, "[r]eceives no instruction or supervision from Commissioners in regard to daily work duties. . . ."  *Id.*   Political affiliation is an inappropriate criteria for the position of Chief Public Defender and, therefore, Defendants' motion for summary judgment will be denied with regard to Plaintiff's First Amendment claims.

**2.	Qualified Immunity**

The doctrine of qualified immunity provides "government officials performing discretionary functions . . . [a shield] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether a particular defendant is entitled to the protections of qualified immunity, the Court must first determine whether a constitutional violation has occurred. *Doe v. Groody*, 361 F.3d 232, 237 (3d Cir. 2004). Then, the Court must determine if the constitutional right at issue was clearly established at the time of the alleged violation. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Qualified immunity is an objective question to be decided by the Court as a matter of law. *Doe*, 361 F.3d at 238. Further, the Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stages of litigation. *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002).

Defendants assert that they are entitled to qualified immunity from Plaintiff's First Amendment claims, because the relevant law was not clearly established. I disagree. An employee's freedom of association rights under the First Amendment to be free from dismissal for partisan reasons has long been established. *See, e.g., Elrod v. Burns*, 427 U.S. 347 (1976). Further, the Court notes that the parties have submitted evidence demonstrating that Defendants appeared to be cognizant of this clearly established right.

Particularly, Defendant Nothstein's deposition reads in relevant part:

> Q.   And if Judge Lavelle made it quite clear that he wanted Mr. Yurchak terminated, why did it take about a year for that to happen?
> A.   Because Mr. Yurchak decided that he was going to run for election. And it sure would have looked bad if we have (sic) done it at that particular time. Then it definitely would have looked political.

(Doc. 50, Nothstein, at 24-25.)  The law at issue in the present case was clearly established and, as such, Defendants are not entitled to qualified immunity.

### 3.  Municipal Liability

For a municipality or other government entity to be liable under 42 U.S.C. § 1983, Plaintiff must establish: (1) a deprivation of a constitutionally protected right; (2) resulting from a policy, practice, or custom.  *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691-94 (1978).  Therefore, a municipality or other body of local government is liable under § 1983 if it "unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Id.* at 690.

Defendants argue that in order to justify a finding of liability against Carbon County, Plaintiff must prove that at least two of the County Commissioners acted with an improper motive in voting to terminate Plaintiff's employment.  Further, Defendants argue that Plaintiff has dismissed his claims against Commissioner Getz and has failed to submit evidence demonstrating that Defendant Nothstein had an improper motive. Plaintiff counters that he has submitted evidence sufficient to demonstrate that both Republican Commissioners, Nothstein and Gerhard, had improper motives for

9

terminating Plaintiff's employment. For the following reasons, I find that Plaintiff has submitted evidence sufficient to maintain his claims against Carbon County.

First, Plaintiff submitted evidence that both Defendants Gerhard and Nothstein displayed political signs in the windows of their cars in support of Plaintiff's opponent during the judicial election. (Doc. 1, ¶ 34.) Further, Plaintiff notes that Defendant Nothstein voted to terminate his employment approximately seventeen (17) months after the note-passing incident articulated by Nothstein as the reason for Plaintiff's termination. Moreover, Plaintiff also submitted evidence that Defendant Nothstein stated reason for his delayed reaction, that Plaintiff's termination would appear to be politically motivated, is inconsistent with the fact that Plaintiff was not yet running for judge. (Doc. 50, Nothstein, at 24-25.) Finally, Plaintiff submitted evidence that neither Commissioner Nothstein nor Commissioner Gerhard discussed their intention to terminate Plaintiff with Commissioner Getz prior to the vote. (Doc. 57, ¶ 21; Doc. 59, Ex. 3, at 6, 16.)

Viewing the evidence in the light most favorable to Plaintiff, I find that Plaintiff has submitted evidence sufficient to allege that Defendant Nothstein had an improper motive for terminating Plaintiff's employment. As such, Plaintiff is entitled to raise the questions of Nothstein's motive and the liability of Carbon County before a jury. Therefore, Defendants' motion for summary judgment will be denied with regard to Plaintiff's claims against Carbon County.

4.     **State Law Claims**

Finally, Defendants seek summary judgment as to Plaintiff's state law claims. Defendants argue only that they are entitled to summary judgment for the reasons set

forth in Defendants' arguments in opposition to Plaintiff's First Amendment claims.  Since I have denied Defendants' motion with regard to Plaintiff's federal law claims, I will also deny Defendants' motion with regard to Plaintiff's state law claims.

## CONCLUSION

First, Political affiliation is an inappropriate criteria for the position of Chief Public Defender and, as such, Defendants' motion for summary judgment will be denied with regard to Plaintiff's First Amendment claims.

Second, the relevant law in this case was clearly established and Defendants are not entitled to qualified immunity from Plaintiff's First Amendment claims.

Third, viewing the evidence in the light most favorable to Plaintiff, I find that Plaintiff has submitted evidence sufficient to allege that both Defendants Gerhard and Nothstein had an improper motive for terminating Plaintiff's employment.  Therefore, Defendants' motion for summary judgment will be denied with regard to Plaintiff's claims against Carbon County.

Finally, since I have denied Defendants' motion with regard to Plaintiff's federal law claims, I will also deny Defendants' motion with regard to Plaintiff's state law claims.

An appropriate Order will follow.

 March 22, 2006                                                /s/ A. Richard Caputo
Date                                                                        A. Richard Caputo
                                                                                United States District Judge

11

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBERT T. YURCHAK, | |
| Plaintiff, | CIVIL ACTION NO. 3:02-CV-0049 |
| v. | |
| COUNTY OF CARBON, et al., | (JUDGE CAPUTO) |
| Defendants. | |

## ORDER

**NOW**, this ___22nd___ day of March, 2006, **IT IS HEREBY ORDERED** that:

Motion For Summary Judgment on Behalf of Defendants, County of Carbon, Pennsylvania a/k/a Carbon County Board of Commissioners, Tom C. Gerhard, and Wayne E. Nothstein (Doc. 35) is **DENIED**.

                                                     /s/ A. Richard Caputo
                                                    A. Richard Caputo
                                                    United States District Judge